UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| KEITH M. CASSELLS, | No. 2:18-cv-2457 JAM DB P |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| NADINE N. VILLA, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that his rights have been violated because he has not been found suitable for parole. Presently before the court is plaintiff's amended complaint for screening. (ECF No. 12.) For the reasons set forth below, the court will recommend that the complaint be dismissed without leave to amend.

**SCREENING**

**I.  Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

////

1

granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Here, the defendants must act under color of federal law. Bivens, 403 U.S. at 389. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

## II. Allegations in the Amended Complaint

Plaintiff names as defendants: (1) Nadine Villa; (2) Terry Fowler; (3) Vijay Desai; (4) Nina Starr; (5) John Garcia; and (6) Rhoda Skipper-Dotta. (ECF No. 12 at 3.)

Plaintiff alleges that on March 2, 1998 he was sentenced to a prison term of thirty years for several counts of second-degree robbery. (Id. at 4.) Approximately ten days later he was returned to court so that Villa, the victim of one of the robberies, could make a statement.

Plaintiff alleges that Villa was (and possibly still is) an employee of California Department of Corrections and Rehabilitation (CDCR). (Id.) He claims her speech contained accusations based on "feelings" and not on the "facts" of the case. Villa called plaintiff a monster and "stated she hoped some hairy lifer would attempt" to sexually assault plaintiff. (ECF No. 12 at 5.)

Plaintiff argues Villa's purpose in speaking at the sentencing hearing was to document allegations that could not be shown by the district attorney and "to aid Villa's 'Red Flagging' of Plaintiff's prison file for all Correctional Counselors and Case records Staff to see and take note of." Plaintiff alleges he was assaulted by fellow inmates on two separate occasions and an officer used excessive force against him. Plaintiff claims these incidents "all stemmed from Defendant Villa's vindictiveness, as the perpetrators of the assaults suffered no major consequence, as one
////

3

was classified as a mental patient and the other paroled soon after attacking plaintiff from behind."

Plaintiff claims that he has been denied parole based on false documentation that was not contained in his prison file.

Plaintiff challenges several findings of unsuitability for release on parole as set forth below:

- August 27, 2015 – Fowler cited a recent rules violation and a victim letter opposing release in finding plaintiff unsuitable for release. Plaintiff claims he verified that he had not received a rules violation since 2012 and there were no registered victims. (ECF No. 12 at 6-7)

- June 3, 2016 – Desai supported his conclusion that plaintiff posed a risk of violence by citing Villa's statements during sentencing. (ECF No. 12 at 8.)

- June 13, 2017 – Starr improperly referenced a discharged conviction in her statement of reasons denying plaintiff parole. (ECF No. 12 at 8.)

- July 23, 2018 – Garcia falsely stated that plaintiff used a weapon and injured a victim during his commitment offense; failed to properly review plaintiff's criminal history under Proposition 57; and ignored plaintiff's rights under the Americans with Disabilities Act ("ADA"). Specifically, plaintiff states Garcia cited plaintiff's lack of participation in work or school and self-help groups such as Alcoholics Anonymous ("AA") in his denial of parole. Further, plaintiff claims Garcia ignored several laudatory letters from prison employees. (ECF No. 12 at 8-10.)

- Plaintiff claims defendant Skipper-Dotta upheld the decisions of defendants Fowler, Starr, and Garcia even after acknowledging the factual errors described in plaintiff's request for review of the denial. (ECF No. 12 at 11.)

Plaintiff claims his rights were violated when Villa, Fowler, Desai, Starr, Garcia, and Skipper-Dotta falsified documentation, committed perjury, and were involved in a criminal conspiracy in violation of his rights. (ECF No. 12 at 12.) He alleges Garcia violated his right to
////

freedom of religion in violation of his First Amendment rights and his rights under the ADA. Plaintiff seeks money damages for the alleged rights violations. (ECF No. 12 at 12.)

### III. Failure to State a Claim under § 1983

#### A. Parole Consideration

Plaintiff claims his rights were violated because he was not found suitable for parole during non-violent second striker reviews conducted in 2015, 2016, 2017, and 2018. (ECF No. 12 at 6-11.) Plaintiff also contends that his rights were violated because those decisions were not overturned during the administrative review process.

#### 1. Non-Violent Second Striker Review Process

On February 10, 2014, the Three Judge Panel in Coleman/Plata[1] issued an order requiring CDCR to "[c]reate and implement a new parole determination process through which non-violent second-strikers will be eligible for parole consideration by the Board of Parole Hearings once they have served 50% of their sentence." See Alexander v. Ground, No. CV 14-6195 SVW(E), 2015 WL 300408 at *2 (C.D. Cal. Jan. 20, 2015). In response to the order, CDCR implemented the Non-Violent Second-Strike Review Process.[2]

Inmates deemed eligible are referred to the Board of Parole Hearings ("the Board"). Inmates may submit a written statement to the Board within thirty days of the date of referral. Cal. Code Regs. tit. 15 § 3492. The district attorney's office from the inmate's county of commitment and any victims registered with the Office of Victim and Survivor Rights and Services may also submit written statements. Thereafter, a deputy commissioner reviews information including the inmate's criminal history, institutional behavior, rehabilitation efforts, and any written statements received to determine if the inmate's release would pose an unreasonable risk to public safety. The deputy's decision is documented in writing and a copy is

---

[1] Coleman/Plata refers to two long running consolidated prisoner civil rights class actions pending in the Eastern (Coleman is Eastern District case No. 2:90-cv-0520 KJM DB) and Northern (Plata is Northern District case No. 3:01-cv-1351 JST) Districts of California. Boyd v. Borders, No. CV 17-8599 SJO (GJS), 2018 WL 1864985 at *3 (C.D. Cal. Feb. 27, 2018).

[2] See Overview of the Board of Parole Hearings Non-Violent Second-Strike Review Process, available at https://www.cdcr.ca.gov/bph/nvss-nsr-second-strike-review-process/.

sent to the inmate.  Decisions may be reviewed upon request within thirty days.  Parties requesting review are instructed to identify the reason(s) the Board's decision was in error.

### 2. Review of Parole Denial is Limited

Section 1983 provides a remedy only for violation of the Constitution or law or treaties of the United States.  Swarthout v. Cooke, 562 U.S. 216, 222 (2011) (the responsibility for assuring that the constitutionality adequate procedures governing California's parole system are properly applied rests with California courts).  Federal review of a parole denial is limited to the narrow question of whether an inmate has received "fair procedures."  Id. at 220.  Under that standard, a federal court may only review whether an inmate has received a meaningful opportunity to be heard and a statement of reasons why parole was denied.  Id.  Plaintiff may not challenge the sufficiency of the evidence supporting the Board's decision.  Roberts v. Hartley, 640 F.3d 1042, 1046 (9th Cir. 2011) (it "makes no difference that [the petitioner] may have been subjected to a misapplication of California's 'some evidence' standard. A state's misapplication of its own laws does not provide a basis for granting" relief.); Miller v. Oregon Bd. of Parole and Post-Prison Supervision, 642 F.3d 711, 717 (9th Cir. 2011) (issue is not whether the Board's parole denial was "substantively reasonable," or whether the Board correctly applied state parole standards, but simply was "whether the state provided Miller with the minimum procedural due process outlined in [Swarthout v.] Cooke").

Based on the allegations contained in the complaint and the exhibits provided by plaintiff (ECF No. 13), it appears that plaintiff received fair procedures during each review process. Although the Non-Violent Second-Striker Review process does not provide qualified inmates with a formal parole hearing, inmates may submit a written statement to the board in support of release.  The process also allows inmates to submit a written request for review of a denial identifying any errors in the Board's decision.  Plaintiff alleges several instances in which the deputy commissioners made mistakes of fact in their review of his central-file.  While the corrections did not change the commissioners' findings of unsuitability, plaintiff's exhibits (ECF No. 13), show that the corrected information was considered during the Board's review process.

////

Additionally, allegations that the Board's decision relied on false evidence is not cognizable. See Herrera v. Long, No. 1:16-cv-0091 MJS HC, 2016 WL 282701, at *2 (E.D. Cal. Jan. 25, 2016) (Board's reliance on "false" evidence does not state a claim so long as plaintiff had a "right to access his records in advance and to speak at the parole hearing to contest the evidence presented.").

Federal courts may not intervene in parole decisions if minimum procedural protections were provided, i.e., an opportunity to be heard and a statement of the reasons why parole was denied. Here, plaintiff was provided the opportunity to be heard, albeit on paper, and was provided with a written statement explaining the deputy commissioners' decisions.

Accordingly, plaintiff has not stated a cognizable claim based his allegations related to the Board's findings of unsuitability.

### 3. Alleged Related to the Reasons Cited in 2018 Denial

Plaintiff alleges Garcia violated his rights under the ADA and the First amendment based on some of the factors discussed in his 2018 report. (ECF No. 12 at 9-11.) Specifically, plaintiff alleges that Garcia cited plaintiff's lack of participation in self-help groups like Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) and lack of work history in support of his decision finding plaintiff unsuitable for parole. Plaintiff explains that he is a practicing Buddhist and participation in AA, which is Christian based, violates his religious freedom. Additionally, he claims citation to his lack of work history violates his rights under the ADA as he is excused from work requirements as he is disabled.[3]

Plaintiff could potentially state a claim had he been advised that he would not be eligible for parole unless he participates in a faith-based program. Turner v. Hickman, 342 F. Supp. 2d 887, 894-96 (E.D. Cal. 2004). However, Garcia did not state that plaintiff was required to attend a faith-based program in order to be eligible for parole. Garcia cited plaintiff's lack of participation "in any rehabilitative or self-help programming" as one factor, among many,

---

[3] Plaintiff has not indicated the nature of his disability other than stating he "suffers from a multitude of illnesses and physical disabilities" and "has been classified as totally medically disabled since 2000-2002." (ECF No. 12 at 10.)

7

supporting his decision to find plaintiff unsuitable for release. (ECF No. 13 at 39.) This does not amount to a requirement that plaintiff attend AA or NA in order to be found suitable for parole. See Williams v. Wong, No. 09-cv-2933 KJM DAD P, 2011 WL 2226207 at *6 (E.D. Cal. June 7, 2011) (finding remarks urging inmate to attend some type of self-help program did not rise to the level of a First Amendment violation).

Plaintiff has alleged that Garcia violated his rights under the ADA. However, Garcia is not a proper defendant in an ADA claim. The proper defendant in ADA actions is the public entity responsible for the alleged discrimination. U.S. v. Georgia, 546 U.S. 151, 153 (2006). Further, as discussed below commissioners and deputy commissioners are absolutely immune when acting in their official capacities.

Accordingly, plaintiff has not stated a cognizable claim based on the explanation of reasons supporting Garcia's finding of unsuitability.

**B. Conspiracy**

Plaintiff alleges that the defendants participated in a conspiracy to deny his release on parole. (ECF No. 12 at 12.) Plaintiff appears to claim that the defendants engaged in a conspiracy based solely on the fact that they are all CDCR employees. Plaintiff has not provided any other facts supporting the existence of a conspiracy.

In the context of conspiracy claims brought pursuant to § 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Pnahi v. L.A. Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. California, 497 F.2d 197, 200 (9th Cir. 1974). "Conspiracy" is not a stand-alone claim. A conspiracy "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012) (en banc) (citations omitted).

A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001)

(quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers of Am., 865 F.2d at 1541).

Here, plaintiff concludes that the defendants conspired because the victim of a crime he pled guilty to worked, at some point, for the same state agency as the defendants. Such allegations are insufficient to show a conspiracy. To state a claim, plaintiff must plead facts showing which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of his constitutional rights. See Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997). Plaintiff was previously advised of the requirements for stating a claim for conspiracy. (ECF No. 6 at 7-8.) However, his amended complaint does not contain facts showing how any of the defendants conspired.

Accordingly, plaintiff's allegations fail to state a cognizable conspiracy claim.

### C. Improper Defendants

Plaintiff was also previously advised that defendant parole commissioners and deputy commissioners are immune from suit when acting in their official capacities. (ECF No. 6 at 6-7.) Plaintiff has again named numerous deputy commissioners as defendants in this action. However, as he was previously advised those defendants are absolutely immune from suit for their role in rendering a parole decision. Sellars v. Procunier, 641 F.2d 1295, 1302-03 (9th Cir., cert. denied, 454 U.S. 1102 (1981).

Further, plaintiff has again named Nadine Villa as a defendant and cited her testimony in connection with his 1998 sentencing. However, as the court informed plaintiff in its prior screening order, plaintiff cannot pursue a § 1983 claim against Villa because she was not acting under color of state law when she testified. (ECF No. 6 at 8.)

////

1       Accordingly, plaintiff has not identified a proper defendant in this action.

**IV.     No Leave to Amend**

As set forth above, plaintiff has not alleged facts sufficient to state a cognizable claim. The court will recommend that plaintiff's amended complaint be dismissed without leave to amend because plaintiff was previously notified of the deficiencies and has failed to correct them. A plaintiff's "repeated failure to cure deficiencies" constitutes "a strong indication that the [plaintiff] has no additional facts to plead" and "that any attempt to amend would be futile[.]" See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 10088 (9th Cir. 2009) (internal citations marks omitted) (upholding dismissal of complaint with prejudice when there were "three iterations of [the] allegations—none of which, according to [the district] court, was sufficient to survive a motion to dismiss"); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims), amended by 234 F.3d 428, overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007); Plumeau v. Sch. Dist. 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

Plaintiff has again failed to identify a proper defendant and repeated the same claims the court previously found to be noncognizable under § 1983. Because plaintiff was given the opportunity to correct the deficiencies in the complaint and has failed to do so, the court is convinced that further amendment would be futile.

Accordingly, the court will recommend that the complaint be dismissed without leave to amend.

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that plaintiff's amended complaint (ECF No. 12) be dismissed without leave to amend.

These findings and recommendations are submitted to the Untied States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days

10

after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 3, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:12
DLB:1/Orders/Prisoner/Civil.Right/cass2457.scrn2